## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JEFFREY KIBLER,**

       **Plaintiff,**

          **v.**

**GENOA TOWNSHIP, OHIO,**

       **Defendant.**

:

       **Case No. 2:23-cv-2466**
       **Chief Judge Sarah D. Morrison**
       **Magistrate Judge Kimberly A. Jolson**

:

## OPINION AND ORDER

Jeffrey Kibler was employed by Genoa Township as a Firefighter/EMT from 2001 to 2021. Mr. Kibler performed his job using hearing aids in both ears without issue after 2006. When his 2021 annual exam revealed that his hearing had fallen below the National Fire Protection Association's ("NFPA") and Genoa Township Fire Department's minimum hearing threshold, Genoa placed Mr. Kibler on leave and ultimately terminated him. Mr. Kibler brings this action against Genoa alleging it violated the ADA and Ohio law when it failed to accommodate him and discriminated against him on the basis of his hearing impairment.[1]

---

[1] Mr. Kibler filed an unopposed Motion to Dismiss his age discrimination claims (Claims 5 and 6). (ECF No. 46.) The Motion moves to dismiss fewer than all the claims, so the Court construes the Motion as a motion to dismiss under Rule 21. *See Dix v. Atos IT Sols. & Servs. Inc.*, No. 1:18-cv-275, 2021 WL 1165762, at \*1 (S.D. Ohio Mar. 25, 2021) (Cole, J.). So construed, the Court **GRANTS** the Motion and **DISMISSES** Claims 5 and 6.

Mr. Kibler and Genoa both moved for summary judgment. (ECF Nos. 48, 49.) Also pending are Genoa's Motions to Strike several affidavits filed in support of Mr. Kibler's summary judgment briefing. (ECF Nos. 50, 56.)

## I. STATEMENT OF FACTS

### A. Mr. Kibler's Firefighter/EMT Role

As a Firefighter/EMT with Genoa, Mr. Kibler was responsible for, among other things, responding to fire alarms and other emergency calls to protect life and property, and for participating in fire prevention, fire suppression, rescue, and hazmat operations. Mr. Kibler was required to work in the Immediately Dangerous to Life and Health ("IDLH") environment, such as a structure fire where the environment could be noisy, dark, wet, and hot with temperatures ranging from 180 to 800 degrees. He was required to wear personal protective equipment ("PPE"), including protective pants, boots, coat, hood, helmet, gloves and a self-contained breathing apparatus ("SCBA"). Mr. Kibler was dispatched to hundreds of runs with the potential to work inside the IDLH environment, including building fires, gas leaks, chimney fires, and motor vehicle fires.

### B. Genoa's Employment Policy

Due to the low visibility of a fire scene, firefighters depend on other senses, such as hearing, to perform rescue operations. (Jackson Dep., PAGEID # 1803–04; Kibler Dep., PAGEID # 590–91.) Genoa firefighters thus participate in limited visibility training to practice working in scenarios where they cannot rely on vision to communicate or locate occupants. (Holtsberry Dep., PAGEID # 2813–14.) Genoa also assesses firefighters' hearing ability when determining whether the firefighter

2

meets its medical requirements for employment.  (ECF No. 31-5, PAGEID # 635–37; ECF No. 31-6, PAGEID # 638–41.) Since 2006, Genoa's employment policy for its firefighters has incorporated the NFPA 1582 Standard on Comprehensive Occupational Medical Program for Fire Departments' minimum hearing acuity threshold for firefighters. [2] (*Id.*)

The NFPA 1582 Standard requires the average hearing in the unaided, better ear of the firefighter be greater than 40 decibels (dB) at 500 Hz, 1000 Hz, and 200 Hz. (ECF No. 42-7, PAGEID # 2159.) Genoa's policy incorporates this requirement, stating "[h]earing aid use is not considered a reasonable accommodation for hearing deprivation." (ECF No. 31-5, PAGEID # 635–37; ECF No. 31-6, PAGEID # 638–41.) According to the NFPA 1582 Standard, hearing aids are not calibrated to function in areas of high background noise and compromise the ability to localize acoustic cues such as calls for assistance, collapsing walls or beams, and changes in fire patterns. (ECF No. 42-7, PAGEID # 2158–59.) Firefighters may use hearing aids if their unaided hearing is above the NFPA threshold because the firefighter meets the minimum standard in the event the hearing aids fail on the scene. (*Id.*, PAGEID # 2159; Ponzi Aff. II, PAGEID # 3232.)

### C.    Mr. Kibler's Hearing Loss

•    Mr. Kibler obtained a hearing aid for his right ear in 2002 and one for his left ear in 2006. (Kibler Dep., PAGEID # 538–39; Kibler Aff. I, PAGEID # 2996.) Mr.

---

[2] The NFPA 1582 Standard provides information and guidance for physicians responsible for fire department medical programs on various topics, including hearing. (ECF No. 42-7.)

Kibler's colleagues, including Genoa's Fire Department Chief Joseph Ponzi, knew that he wore hearing aids. (Ponzi Dep. Vol. I, ECF No. 32-1, PAGEID # 790, 794, 818.) After receiving his second hearing aid, Mr. Kibler continued to work as a Firefighter/EMT until August 2021 without any incidents related to his hearing aids. (Ponzi Dep. Vol. II, ECF No. 33-1, PAGEID # 932; Kibler Aff. I, PAGEID # 2996.)

On August 19, 2021, Mr. Kibler attended his annual physical examination with Dr. William Cann. (Cann Dep., ECF No. 36-1, PAGEID # 1414–15; Kibler Dep., PAGEID # 547.) Dr. Cann determined that Mr. Kibler did not meet the NFPA threshold and requested that Mr. Kibler's audiologist provide Mr. Kibler's most recent audiological examination. (Cann Dep., PAGEID # 1435–37, 1439–40.) Dr. Cann released Mr. Kibler to work without restrictions, but Genoa placed Mr. Kibler on paid administrative leave on August 21, 2021. (ECF No. 36-11, PAGEID # 1645; Kibler Aff. I, PAGEID # 2996.)

Mr. Kibler visited his audiologist on August 23, 2021. (Kibler Dep., PAGEID # 547–48.) The audiologist also concluded that Mr. Kibler's hearing loss fell below the NFPA threshold, but said that Mr. Kibler should have no issue performing his duties while using his hearing aids. (ECF No. 36-7, PAGEID # 1521; Durst Dep., ECF No. 29-1, PAGEID # 220–221, 230; ECF No. 29-3, PAGEID # 303.)

Four days later, Dr. Cann told Chief Ponzi that Mr. Kibler did not meet the NFPA threshold and that Mr. Kibler's hearing impairment could degrade his ability to perform certain firefighting tasks. (ECF No. 36-7, PAGEID # 1521–22.) Dr. Cann

4

reviewed Mr. Kibler's past hearing test results and found that his hearing had not met the NFPA threshold since at least 2011, and that his hearing had "gradually worsened and worsened precipitously between 2017 and 2018." (*Id.*) Dr. Cann advised Chief Ponzi that to allow Mr. Kibler to continue working as a Firefighter/EMT was a "risk management decision," but that he could not accurately predict whether Mr. Kibler will be able "to hear and understand the spoken voice under conditions of high background noise, or hear, recognize, and directionally locate cries or audible alarms" in the firefighting environment. (*Id.*) Dr. Cann recommended that Mr. Kibler wear his hearing aids and hearing protection, and that Genoa consider implementing "administrative controls" to minimize the chance of Mr. Kibler's hearing aids failing and "closed-loop communication practices" between Mr. Kibler and his co-workers. (*Id.*)

Chief Ponzi testified that, although he knew Mr. Kibler used hearing aids, he was unaware that Mr. Kibler's hearing had fallen below the NFPA threshold until Dr. Cann contacted him. (Ponzi Aff., ECF No. 49-17, PAGEID # 3135.)

One month after he provided his recommendations to Genoa, Dr. Cann told Chief Ponzi that, while the use of hearing aids among firefighters had not been studied, there was a concern that hearing aids could suddenly fail in an IDLH environment, particularly because a firefighter's sweat could interfere with the hearing aid. (ECF No. 36-8, PAGEID # 1525.) Mr. Kibler's hearing aids were water resistant but not waterproof, so sweat could degrade their performance. (*Id.*) Dr. Cann recommended that Chief Ponzi consider if there were any reasonable

accommodations to continue Mr. Kibler's employment while excluding him from any IDLH environments or environments where ambient noise could degrade the functionality of his hearings aids. Dr. Cann advised that, if Mr. Kibler was unable to effectively communicate with members of his team, it could adversely impact his safety, the safety of his fellow firefighters, and the safety of the citizens of Genoa Township. (*Id.* at PAGEID # 1526.)

### D. Proposed Accommodations

On October 7, 2021, Genoa convened a pre-separation conference during which Mr. Kibler proposed four accommodations: (1) allow him to work with his hearing aids; (2) impose a requirement that he carry a second pair of hearing aids as a backup and continue to work all of his job duties; (3) allow him to only work as an engineer and not perform other firefighting duties at scenes; or (4) transfer him to an administrative position. There was no resolution at the conference.

Following the conference, Genoa contacted the Job Accommodation Network ("JAN")[3] about appropriate accommodations for a firefighter who has hearing loss below the NFPA threshold. (ECF No. 42-31, PAGEID # 2544.) JAN responded that "[i]t may be that reassignment to a vacant position may be the only option if the individual's hearing loss cannot be improved." (*Id.*) No one from JAN spoke with Mr. Kibler.

---

[3] JAN is a service provided by the U.S. Department of Labor's Office of Disability Employment Policy and offers employers guidance and technical assistance on job accommodations and disability employment issues. *About JAN*, Job Accommodation Network, https://askjan.org/about-us/index.cfm.

On December 3, 2021, Chief Ponzi rejected Mr. Kibler's proposed accommodations and told him that Genoa was placing him on Family Medical Leave because he was not fit-for-duty. (ECF No. 49-9.) Chief Ponzi rejected the first accommodation because it did not address the safety issues raised by the fact that Mr. Kibler did not meet the NFPA threshold or Genoa Policy, particularly in an IDLH environment. (*Id.* at PAGEID # 3119.) He rejected the second accommodation because it would not be safe or feasible to swap-out malfunctioning hearing aids in an IDLH environment. (*Id.*) He rejected the third proposed accommodation because it would eliminate some of Mr. Kibler's job functions and create staffing and safety concerns. (*Id.* at PAGEID # 3120.) Finally, he rejected the fourth proposed accommodation because no administrative positions were available. (*Id.*)

Mr. Kibler then proposed two additional accommodations: (1) place him in the Staff Lieutenant position; or (2) allow him to continue in the Firefighter/EMT position, but permit him to run the truck if a fire entry occurs during his shift until a vacant position for which he is qualified becomes available. Genoa rejected both proposed accommodations.

### E.     Mr. Kibler's Termination

On Chief Ponzi's recommendation, the Genoa Board of Trustees voted to terminate Mr. Kibler. On April 21, 2022, Chief Ponzi notified Mr. Kibler that his employment with Genoa had been terminated.

Chief Ponzi did not conduct any tests with Mr. Kibler to assess the risk posed by his hearing impairment. Instead, Chief Ponzi says that he considered his own experience as a firefighter and personal knowledge of the requirements of a Genoa

Firefighter/EMT when he evaluated the information from Dr. Cann and JAN, and he determined that Mr. Kibler was not fit for duty. (Ponzi Dec. II, ECF No. 52-1, PAGEID # 3233.)

## II.     MOTIONS TO STRIKE

Genoa moves to strike the affidavits of Cpt. Spitler, Chief Clint Canterbury, and Lt. Chad Cochran submitted in support of Mr. Kibler's motion for summary judgment. (ECF No. 50.) Genoa also seeks to strike Mr. Kibler's second affidavit submitted with his reply in support of his summary judgment motion. (ECF No. 56.)

### A.     Motion to Strike Spitler, Canterbury, and Cochran Affidavits

Genoa moves to strike the affidavits of Cpt. Spitler, Pleasant Township Fire Chief Canterbury, and Lt. Cochran because: (1) Mr. Kibler failed to identify Cpt. Spitler and Chief Canterbury in his initial disclosures in violation of Rule 26; and (2) Lt. Cochran's affidavit exceeds the scope of his disclosed knowledge in violation of Rule 56.

Mr. Kibler argues that Genoa's Motion to Strike is improper because affidavits are not pleadings subject to a Rule 12(f) motion to strike. (ECF No. 57, PAGEID # 3279–80.) But Genoa brings its Motion to Strike Cpt. Spitler's and Chief Canterbury's affidavits under Rule 37; under that rule, the Court may impose sanctions, including the exclusion of affidavits, for violations of Rule 26(a) or (e). As to Lt. Cochran's affidavit, Genoa brings its motion under Rule 56. While Rule 56 does not expressly provide a mechanism for a motion to strike affidavits, "courts should generally consider a motion to strike an affidavit as a matter of the 'admissibility of the evidence offered in the affidavit, and the competency of the

8

affiant to testify to the matters stated therein.'" *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 197 (6th Cir. 2018) (quoting *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966)).

### 1.    Spitler and Canterbury Affidavits

Rule 26 requires parties to make certain mandatory disclosures during the initial stages of litigation. Thereafter, a party "must supplement or correct its disclosure ... in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). There is no duty to supplement a Rule 26 disclosure if the information "has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." Fed. R. Civ. P. 26(e) advisory committee's note (1993). While "[t]he mere mentioning of a potential witness's name . . . is insufficient [to] demonstrate that the opposing party knew the party who failed to disclose the witness might call that person to testify at trial," a party is relieved of the duty to disclose "when a party has good reason [to] know that a person has knowledge supporting the opposing party's litigation position." *Sjostrand v. Ohio State Univ.*, No. 2:11-CV-00462, 2014 WL 4417767, at *2 (S.D. Ohio Sept. 8, 2014) (Abel, M.J.).

Mr. Kibler says that he did not disclose Cpt. Spitler or Chief Canterbury because their names were referenced in depositions taken after his initial disclosures were filed. (*See* ECF No. 57.)

As to Cpt. Spitler, Mr. Kibler's counsel asked Firefighter Brock Piatt during his deposition whether he had ever talked to Cpt. Spitler about Mr. Kibler's termination, to which Mr. Piatt responded that Cpt. Spitler said that "Ponzi came into his office and told him that Jeff was cleared to come back to work, but he was setting an example." (Piatt Dep., ECF No. 37-1, PAGEID # 1691–92.) When Mr. Piatt was asked what Chief Ponzi meant by "setting an example," Mr. Piatt said that: "he was going to go ahead and let Jeff go. ·Hearsay, so I don't know what's true on that. You would have to contact Andy Spitler on that one." (*Id.*)

At the time of Mr. Piatt's deposition, it was clear that Chief Ponzi was a witness with knowledge of Mr. Kibler's termination. (*See* ECF 50-1, PAGEID # 3147.) Mr. Piatt's testimony was sufficient to place Genoa on notice that Mr. Kibler could use Cpt. Spitler as a witness on the subject of statements made by Chief Ponzi. Thus, Mr. Kibler did not violate Rule 26(e) with respect to Cpt. Spitler.

As to Chief Canterbury, Genoa's counsel asked Mr. Kibler what he told Chief Canterbury about his termination; Mr. Kibler responded: "I don't know. He was aware of my being terminated. That tends to go around like hot butter so I don't know what the conversations were." (Kibler Dep., PAGEID # 581–82.) Unlike the deposition testimony regarding Cpt. Spitler, the mere mention of Chief Canterbury in Mr. Kibler's deposition was insufficient to place Genoa on notice of Mr. Kibler's

10

intent to use Chief Canterbury as a witness. The foregoing exchange does not suggest that Chief Canterbury has knowledge supporting Mr. Kibler's claims; it merely suggests that Chief Canterbury knew Mr. Kibler had been terminated. Similarly, Mr. Kibler's disclosure of the fire departments where he had worked was insufficient to put Genoa on notice the Mr. Kibler intended to call Chief Canterbury as a witness.

When "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A noncompliant party may avoid sanction if "there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (internal quotation marks omitted) (citation omitted).

Mr. Kibler, as the party seeking to avoid the Rule 37 sanction, has the burden of showing that any omission was either substantially justifiable or harmless. *Roberts*, 325 F.3d at 782. To assess whether a party's omitted disclosure is "harmless" or "substantially justified," the Court considers five factors:

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise;
> (3) the extent to which allowing the evidence would disrupt the trial;
> (4) the importance of the evidence; and
> (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

Mr. Kibler's failure to disclose Chief Canterbury was neither harmless nor substantially justified. First, as discussed above, Genoa was surprised by Mr. Kibler's use of Chief Canterbury as a witness. Second, because Mr. Kibler filed Chief Canterbury's affidavit after the close of discovery, Genoa could not cure the surprise. Third, allowing Chief Canterbury as a witness would require the Court to re-open discovery in this case. Fourth, there is no dispute that Mr. Kibler performed his firefighting duties without incident when wearing his hearing aids so Chief Canterbury's testimony that Mr. Kibler did not have any incidents with his hearing aids while working for Pleasant Township does not cut sharply in either party's favor. Finally, as discussed above, Mr. Kibler's explanation for his failure to disclose is insufficient.

Genoa's Motion is **DENIED** as to Cpt. Spitler's affidavit and **GRANTED** as to Chief Canterbury's affidavit.

### 2. Cochran Affidavit

Genoa next moves to strike Lt. Cochran's affidavit, arguing that his testimony exceeds the scope of his disclosed knowledge.

Rule 56(c)(4) requires that a "declaration used to support or oppose a motion must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Any portion of an affidavit that violates Rule 56 should be disregarded. *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 197 (6th Cir. 2018). "In order for inferences, thoughts, and opinions to be properly

included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and established by specific facts." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007). A court should "use a scalpel, not a butcher knife" and disregard only those portions of the affidavit that are inadmissible. *Id.* at 469.

First, Genoa challenges Lt. Cochran's testimony that Genoa "initiated a policy that forbid anyone with hearing aids from being an employee" in 2007 but did not enforce that policy before Mr. Kibler's termination. (Cochran Aff., PAGEID # 2992.) But Lt. Cochran testified that he has worked at Genoa since 2001 and was the president of its Fire Department's union at the time of Mr. Kibler's termination; thus, his testimony regarding Genoa's policies and their implementation is within his personal knowledge.

Second, Genoa challenges Paragraphs 10 through 14 of Lt. Cochran's affidavit because the affidavit "fails to establish how [Mr. Kibler's] medical history, testing results, and qualifications of reviewing physicians are within his personal knowledge." (ECF No. 50, PAGEID # 3145–46.) The Court agrees and will disregard Paragraphs 10 through 13. However, Lt. Cochran's testimony in Paragraph 14 that Mr. Kibler's "hearing aids have never failed on the job[]" is fairly within his personal knowledge. (Cochran Aff., PAGEID # 2992.)

Genoa's third argument is that Lt. Cochran's affidavit exceeds the scope of his "disclosed knowledge" to the extent that it discusses Genoa's policy regarding firefighters wearing hearing aids. (ECF No. 50, PAGEID # 3145.) But Lt. Cochran's testimony is fairly within Mr. Kibler's initial disclosure that Lt. Cochran had

13

information relevant to "[Mr. Kibler's] ability to perform the essential functions of his job with an accommodation, as well as [Genoa's] termination of [Mr. Kibler]" and "about [Genoa] treating similarly situated employees differently than [Mr. Kibler] because of his disability." (ECF No. 50-1, PAGEID # 3148.)

Finally, Genoa challenges Lt. Cochran's averment that Genoa "did not want to entertain any of [Mr. Kibler's] suggested accommodations" because Lt. Cochran's affidavit does not establish his personal knowledge of Genoa's conversations with Mr. Kibler on his accommodations. (ECF No. 50, PAGEID # 3146 (quoting Cochran Aff., PAGEID # 2993).) But Lt. Cochran was Mr. Kibler's Union Representative and he attended the pre-separation meeting with Mr. Kibler; this testimony is fairly within his personal knowledge. (Kibler Dep., PAGEID # 560–61.)

Genoa's Motion is **GRANTED** as to Paragraphs 10 through 13 of Lt. Cochran's affidavit. The Motion is otherwise **DENIED**.

### B.    Motion to Strike Mr. Kibler's Second Affidavit

Genoa moves to strike Mr. Kibler's second affidavit, arguing that it is (1) untimely; and (2) inconsistent with his prior deposition testimony and medical records. (ECF No. 56.)

#### 1.    Untimeliness

Rule 6(c)(2) requires that any affidavit supporting a motion be served with the motion. Fed. R. Civ. P. 6(c)(2). That said, an affidavit may be filed with a reply brief if "two conditions are satisfied: (1) the affidavit responds only to the nonmoving party's opposition memorandum, and (2) the nonmoving party has an

14

opportunity to respond." *Gilleland v. Schanhals*, 55 F. App'x 257, 261 (6th Cir. 2003) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002)).

Both conditions are satisfied here. Mr. Kibler's second affidavit contradicts Genoa's assertion in its Response that Mr. Kibler's hearing aids have previously malfunctioned. (*See* Def.'s Response in Opp., ECF No. 52, PAGEID # 3224.) Additionally, Genoa had an opportunity to respond to Mr. Kibler's second affidavit; its Motion to Strike serves this very purpose.

### 2.    Inconsistency

An affidavit that "directly contradicts prior sworn testimony should be stricken 'unless the party opposing summary judgment provides a persuasive justification for the contradiction.'" *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)). Where a deponent is "asked specific questions about, yet denie[s] knowledge of, the material aspects of h[is] case, the material allegations in h[is] affidavit directly contradict h[is] deposition." *Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 976 (6th Cir. 2019) (quoting *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013)).

At his deposition, Genoa asked Mr. Kibler about visits to his audiologist on August 26, 2021, and February 24, 2022. Mr. Kibler testified that he did not remember why he visited his audiologist on these dates. (Kibler Dep., PAGEID # 549–50.) When asked whether these appointments—which occurred during his

15

employment with Genoa—were due to his hearing aids malfunctioning, Mr. Kibler testified that he did not recall. (*Id.*)

Mr. Kibler's second affidavit contradicts his deposition testimony. In Paragraphs 2 and 3, he details the reasons for both audiologist appointments and says that his hearing aids neither failed nor malfunctioned at either appointment.[4] (Kibler Aff. II, ECF No. 54-1.) Paragraph 4 includes an assertion that he has "never experienced a malfunction or failure of [his] hearing aids while working as a Firefighter." (*Id.* at PAGEID # 3257.) Mr. Kibler does not identify what refreshed his recollection about these appointments after his deposition. Paragraphs 2 through 4 plainly contradict his deposition testimony for which Mr. Kibler offers no persuasive justification. Thus, the Court will disregard Paragraphs 2 through 4 of Mr. Kibler's second affidavit.

Genoa's Motion to Strike Mr. Kibler's second affidavit is **GRANTED in part**. The Court will disregard Paragraphs 2 through 4 of Mr. Kibler's second affidavit. The Motion is otherwise **DENIED**.

## III.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine

---

[4] Mr. Kibler's second affidavit states that the audiologist appointments occurred "[o]n or about" August 23, 2021 and January 22, 2022 but he later concedes that he is referring to the August 26, 2021 and February 24, 2022 appointments discussed at his deposition. (ECF No. 61, PAGEID # 3349.)

16

issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

The standards on which a court evaluates motions for summary judgment "do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citation omitted).

17

### B. ANALYSIS

Mr. Kibler brings a failure to accommodate claim under the ADA and Ohio law (Claims 1 and 2) and a disparate treatment claim under the ADA and Ohio law (Claims 3 and 4).

Employers are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination is defined to encompass an employer's failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business[.]" *Id.* § 12112(b)(5)(A).

Whether brought under the ADA or Ohio law, disability discrimination claims are analyzed in the same manner. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007); *see also Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) ("In light of the fact that Ohio's disability discrimination law parallels the ADA in all relevant respects, we apply the same analytical framework[.]").

### 1. Failure to Accommodate (Claims 1 and 2)

Courts analyzing disability discrimination claims use "two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605,

18

614 (6th Cir. 2020). Because failing to make a reasonable accommodation falls within the ADA's definition of "discrimination," claims premised on an employer's failure to offer a reasonable accommodation "necessarily involve direct evidence [of discrimination]" such that courts "jettison the familiar *McDonnell Douglas* burden-shifting framework applicable in indirect-evidence cases." *Kleiber*, 485 F.3d at 868–69 (citation omitted).

Mr. Kibler must make a prima facie showing that Genoa failed to accommodate his known disability and that his proposed accommodation was reasonable. To do this, Mr. Kibler must demonstrate:

> (1) he was disabled within the meaning of the statute; (2) he was otherwise qualified for his position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the defendant failed to provide the necessary accommodation.

*King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022) (citation and internal quotation marks omitted) (cleaned up). If he makes this showing, "the burden shifts to [Genoa] to demonstrate that [the] particular accommodation would impose an undue hardship" on it as the employer. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011).

Genoa disputes that Mr. Kibler was otherwise qualified for his position with or without reasonable accommodation.

An individual is "otherwise qualified" if he can perform the "essential functions" of the job with or without reasonable accommodation. 42 U.S.C. § 12111(8). When an accommodation is necessary to allow a plaintiff to perform the

19

essential functions of his position, it is the plaintiff's burden to propose an accommodation that is "objectively reasonable." *Kleiber,* 485 F.3d at 870. In defining what is reasonable, the Sixth Circuit has described the employee's burden as showing that the accommodation is reasonable in the sense both of efficacious and of proportional to costs.'" *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996) (citation omitted). "Determining the reasonableness of a proposed accommodation is a question of fact." *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1229–30 (6th Cir. 2022) (quoting *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998)).

The parties agree that the essential functions of a firefighter/EMT are performing firefighting and suppression tasks (including rescue, entry, ventilation and salvage work) and other emergency response actions; these functions must be performed while continuously wearing PPE and working in extremely hot or cold environments for prolonged time periods. They also agree that Mr. Kibler failed to meet the NFPA threshold, so that he cannot perform the essential job functions without an accommodation. Mr. Kibler argues that there are three accommodations that are reasonable and would allow him to perform the essential job functions: that Genoa (1) allow him to work with his hearing aids; (2) require Mr. Kibler carry a second pair of hearing aids as a backup; or (3) allow him to only work as an engineer and not perform other firefighting duties at scenes.

With respect to the first two proposed accommodations, neither addresses that the NFPA threshold is a threshold for *unaided* hearing. Mr. Kibler argues that

20

these accommodations are nevertheless reasonable because he used hearing aids in both ears while working as a Firefighter/EMT for 15 years without issue, even though he did not meet the NFPA threshold for the majority of that time. But, in light of the evidence that Mr. Kibler's hearing has worsened over time, Mr. Kibler's prior performance is not dispositive of his continued ability to meet the essential qualifications of the Firefighter/EMT role. *See Hummel v. Cnty. of Saginaw*, 40 F. App'x 965, 969 (6th Cir. 2002); *Jones v. Walgreen Co.*, 679 F.3d 9, 18 (1st Cir. 2012) ("[A]n ADA plaintiff may not rely on past performance to establish that []he is a qualified individual without accommodation when there is undisputed evidence of diminished or deteriorated abilities.").

Nor does the fact that his hearing aids have not failed on the job establish that continued use of his hearing aids would be a reasonable accommodation. Indeed, Mr. Kibler's hearing aids have, in fact, malfunctioned after exposure to water. (Durst Dep., PAGEID # 251.) Further, Genoa has offered evidence that the risk of Mr. Kibler's hearing aids failing in an IDLH environment is not merely speculative. Dr. Stanely C. Haimes (a physician who works on the technical committee that established the NFPA threshold) testified that the NFPA 1582 Standard does not permit firefighters to use a hearing aid to meet the minimum hearing threshold because hearing aids are not "designed for operation in structural firefighting environmental conditions of elevated heat, water deluge, and humidity and therefore being subject to unpredictable failure under those conditions." (Haimes Rep., PAGEID # 2076.) Dr. Haimes says that carrying a spare hearing aid

21

would not alleviate these safety concerns because "it would be extremely dangerous - if not life threatening - to have the firefighter remove his personal protective equipment" to replace his hearing aids while on a call. (*Id.*)

Mr. Kibler's proposals to continue wearing hearing aids and/or carry a backup pair were thus unreasonable in light of a firefighter's reliance on his hearing in low visibility situations and the testimony that hearing aids can unpredictably fail in an IDLH environment. Mr. Kibler effectively argues that Genoa should ignore its own policy and application of a national standard, recommendations from a medical professional, and the danger posed by the potential and "unpredictable" failure of hearing aids in an IDLH environment, in favor of hoping that nothing goes wrong in the future. The law does not require Genoa to assume this risk.

Turing to his third accommodation, Mr. Kibler also fails to show that moving him to an engineer position is reasonable. Genoa rejected this accommodation because there was no full-time engineer position and because the engineer on scene must still operate in an IDLH environment and perform fire suppression tasks. (ECF No. 49, PAGEID # 3090–91; Ponzi Aff., PAGEID 3136.) While Mr. Kibler counters that he could perform any firefighting functions with his hearing aids on the "rare occasion" it became necessary to do so, this poses the same issue as the first two proposed accommodations. Moreover, that the engineer may rarely perform fire suppression tasks does not mean that firefighting tasks are not an essential job function. This is particularly so when, as here, failing to (safely) perform the task creates a serious risk for the employee, his coworkers, and the public. *See Wardia v.*

22

*Justice and Public Safety Cabinet Dept. of Juvenile Justice*, 509 F. App'x 527, 530 (6th Cir. 2013) ("Rarity alone will not support a denial of summary judgment: courts will first look to the seriousness of failing to perform the low-probability job function.").

Mr. Kibler fails to create a genuine dispute that his proposed accommodations were reasonable and will allow him to perform his essential job functions. Accordingly, Genoa's Motion for Summary Judgment is **GRANTED** on Counts I and II and Mr. Kibler's Motion for Summary Judgment is **DENIED** on Counts I and II.[5]

### 2. Disability Discrimination

In addition to his claims that Genoa failed to accommodate his disability, Mr. Kibler alleges that it discriminated against him based on his disability in violation of both the ADA and Ohio law.

To establish a prima facie case of disability discrimination, Mr. Kibler must show that (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016).

---

[5] Mr. Kibler's failure-to-accommodate claim also alleges that Genoa failed to engage in the interactive process required by the ADA and Ohio law. Failure to engage in the interactive process is only an independent violation of the law if the plaintiff has established a prima facie showing that he proposed a reasonable accommodation. *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014). Because the Court finds that Mr. Kibler has failed to establish that he proposed a reasonable accommodation, the Court does not address this element of his claim.

As discussed in the context of his failure to accommodate claim, Mr. Kibler has not shown that he was otherwise qualified for the Firefighter/EMT role with or without a reasonable accommodation. His disability discrimination claim thus fails for the same reason as his failure-to-accommodate claim.

Genoa's Motion for Summary Judgment is thus **GRANTED** on Counts III and IV. Mr. Kibler's Motion for Summary Judgment is **DENIED** on Counts III and IV.

## IV.     CONCLUSION

For the reasons above, Mr. Kibler's Motion to Dismiss his age discriminations claims (Claims 5 and 6) (ECF No. 46) is **GRANTED**. Genoa's Motions to Strike (ECF Nos. 50, 56) are **GRANTED** as to Chief Canterbury's affidavit, Paragraphs 10 through 13 of Lt. Cochran's affidavit, and Paragraphs 2 through 4 of Mr. Kibler's second affidavit. The Motions to Strike are otherwise **DENIED**. Genoa's motion for summary judgment (ECF No. 49) is **GRANTED**. Mr. Kibler's motion for summary judgment (ECF Nos. 48) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

24